The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to give your attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, good afternoon everybody. Welcome to the Fourth Circuit. We have three cases on calendar for this afternoon and we'll begin with United States v. Legins and Mr. Gavin, whenever you're ready. Thank you, Judge. Are you able to hear me? Yes, sir. All right, thank you. Judges and Mr. Wang, may it please the Court, I represent Chikosi Legins. My name is Charles Gavin. We have three primary arguments. The first argument is based on sufficiency of the evidence and because I believe that's Mr. Legins' best argument, I'm going to try to spend a little time with that. My thought and my argument is that the evidence was insufficient as a matter of law to convict Mr. Legins on count five. The more specific argument is that the government failed to establish substantial credible evidence that the specific sexual act, which was alleged in count five, actually occurred. If it didn't occur, then there's no evidence to establish that it was false. If it was not a false statement or if it was not established, then the falsity element of 1001 could not be established. To further dial in on that, my argument is that in particular, there was no specific substantial credible evidence that supported the finding of penetration and penetration was required because it was contained as part of the definition of sexual act upon which the conviction was based. There were two statements and both of those predicated on the existence of a sexual act which would have required penetration. For the evidence that applied to penetration, there were essentially two components. The first component was the victim's testimony. The second component was the physical evidence and the scientific evidence that was recovered in a rape kit exam that happened after the incident on May 10, 2018. Looking at the scientific evidence first, you see that right after the incident, the victim was transported to St. Mary's and an extensive rape kit was done and analyzed. Most importantly, nothing was shown. Nothing was found. There was not one evidence or evidentiary item that established that there was a tear in the victim's anus, not so much as a skin cell broken. No subjective evidence of pain. There was nothing to support any penetration at all. The best and most significant piece of evidence for the United States was the existence of DNA somewhere around the victim's anus, but we don't know where and we don't know how it got there. We don't know when it got there. We don't know the medium in which it was transported there. There is evidence that there is DNA there, but there was nothing else to substantiate the allegation of actual penetration. There was no internal test done because the evidence, frankly, was so inadequate that an internal test was not even justified by the examiner at the time. Mr. Gatton, can I ask you, the eyewitness, sorry, the victim testified to the sexual act. We can't take that testimony by itself as being the next part. Is that substantial and credible? The jury acquitted the defendant of four other counts that were based on the victim's direct testimony, which they obviously discredited as incredible. If you look at the specific testimony in regards to the May 10th incident, the testimony is so over-exaggerated, it's incredible, and I say that specifically. The victim indicated under oath and affidavit almost immediately after this that he was forcefully and angrily raped for five minutes in and of itself in that office room back on May 10th. The entire time that they were back in that corridor, which we know, which does not rely on his credibility, was 315 seconds. That's the time they entered the corridor until the time they exited. I introduced an expert, not an expert, but an investigator who testified that just the simple act of walking from one place to the next and exiting would have taken up 70 of those 315 seconds. So what the defendant in his version has alleged is that he was forced to go back into the office room. He was forced to perform oral sex on the defendant for a period of time, after which they then moved to a different section of the room, after which he was forcefully anally raped for five minutes, according to the victim, after which they cleaned up, after which Mr. Bliggins had to go to the restroom, and then after which they departed the other side. Now, according to that version, all of that would have had to happen in less than four minutes, which is just simply incredible, and that's what I was able to argue to the jury, and I believe that is what the jury agreed with me upon, is that it just didn't happen. So if it didn't happen, then the evidence from the victim's side can't really be considered as cripple in light of the absence of any physical evidence that would corroborate that. So, Judge Diaz, I would say to you that not only the physical evidence to support it, but the actual testimony of the victim is not substantial or credible enough, specifically and especially in light of the jury's verdict on the other four substantive accounts, to render his testimony credible. You mentioned the verdicts, and admittedly, at least at first glance, they do tend to be inconsistent, but there are all kinds of reasons why a jury might acquit on one count and convict on the other. What leads you to believe that the primary reason for the acquittal by the jury was that the jury simply didn't believe the victim's testimony? Well, are you going to gore my oxen or Mr. Wang's oxen, I think, under the Louthien case? But I agree that the case law still is out there, that an inconsistent verdict does not necessarily win me the day, but even though it does not win me the day, I think to gore my ox, you still have to establish, and the government was required to establish, that there was and that takes me back to whether or not there was actual penetration, because if there was no actual penetration or no established substantial credible evidence to establish penetration, then the falsity element was never established and he should have been acquitted of count five. Well, I may have just absolutely misunderstood this case. I thought the key issue in here was the Apprendi issue and Eileen in that the indictment did not contain any allegation about the enhancement and in order for him to be subjected to it, that's an element that the jury would have had to find. I mean, is that the real issue in this case? That's the second issue of the case, Judge Floyd, and the issue arose out of the fact that after the verdict was in, Judge Novak realized that the arraignment on the record was five years and based on the five-year standard 1001 penalty, but then based on it being a sexual act, quote-unquote, that would have subjected the defendant to an eight-year penalty. So it's an issue of whether or not he constructively amended the indictment or whether he just failed to instruct the jury as he should have to include that extra element, because I agree that the indictment does contain the basic elements for a 1001 offense, but under Apprendi, in order to convict the defendant of a crime that would have increased his level to an eight-year max, then the actual wording that relates it to a chapter offense under 209A would have had to have been included and would have had to have been established as an element in the actual trial. Mr. Gavin, can I ask a follow-up to that? And I get your point that you say that the evidence simply was insufficient to prove a sexual act, but if we disagree with you and conclude that the jury did, in fact, find that a sexual act was committed by your client, doesn't that answer the factual question that Apprendi is concerned about? I mean, the question as to whether or not the offense relates to one under Chapter 109 seems to me to be a purely legal one that it wasn't necessarily or should not have been necessarily part of the jury's calculus. Well, Judge, if I understand your question, as I understand the law, if it's going to increase the maximum from five to eight, then it's an element that has to be submitted to the jury. No, I don't disagree with that. The question is exactly what was it that the jury had to find, that they had to find both that a was, in fact, that offense relates to Chapter 109. There simply can't be any dispute about that, or do they have to find both? They have to find both. That's my argument. They have to find that the sexual act was committed, otherwise it wasn't false. They also have to find that the offense was specifically related to 109A, and that was not given to them, the instruction. So, can I follow up on that? Because it seems like words matter here, and you used the word offense is related to 109A, but I read 1001 to say that the matter must be related to 109A, and I read matter to refer to the investigation, not the crime. Is that not the right way to read that portion of 1001? Judge Richard, I would agree with you. That was a poor choice of words on my part, but it's still at the end of the day. But help me understand if that matters, right? Because if the question is does the offense or the statement relate to 109A, you got a really hard argument to make because, you know, for the reasons Judge Dee has described, the challenge is that it's a slightly different question of whether the investigation related to 109A. I mean, we know for sure that it did, but at least in theory, you could have asked a sexual question in a drug investigation or some other public corruption investigation. And so, I took your point to be that the government needed to prove that investigation was related to 109A and that that's just, you know, might be true. In fact, we all know it's true, but we don't have that in the indictment and we don't have that before the jury. That's correct, Judge Richard, and my point was that the jury instruction that was given to the jury did not define sexual acts for this particular account. It also did not include any language in the instruction that included as an element that the matter, in your case, be related to 109A. Can I ask a related question to that then? You seem to make a jump here by saying in the 1001 count that the phrase sexual act, it has the definition that is used in the indictment. Why would we think that as opposed to thinking the term sexual act has its common and ordinary understanding in the context of a discussion with FBI agents and not a legal question? And so, the jury was able to interpret sexual act not so limited as the federal code might suggest, but in fact, in the more common and ordinary understanding, which is not limited to Judge Richard. That's a legal question, right? So, the legal question is, did the jury have to apply the federal code definition? Nobody suggested it. You didn't argue that below. Or was the jury entitled to apply its own understanding of sexual act or whether that statement was false? I believe that the jury was required to be at least given a definition as to what a sex would be. Whether or not that's the code language or whether or not that leaves it up to their interpretation of what sexual act is. They were not given any instruction on the definition. Did your client request an instruction? We had no reason to ask for an instruction at that point because when we were arguing in front of the jury, this issue of the eight-year versus the five-year wasn't on the table. That happened after the verdict. I see my time is almost up. Is there anything else that I can address to the judges? Judge Floyd, do you have anything else? No, sir. Okay. I saw Judge Richardson shake his head no, so I'll take that as a no. Thank you very much, Mr. Gavin. We have some time left for rebuttal. We'll hear from the government and Mr. Wang. Thank you, Your Honor. May it please the court, Christopher Wang on behalf of the United States. The evidence showed and the jury found that Liggins lied to federal agents investigating whether he sexually abused an inmate in an unattended, unsurveilled prison office after hours. None of Liggins' arguments on appeal warranted the overturning of his conviction or sentence on the false statement counts. Now, I'll turn to the sufficiency issue because opposing counsel spent much of his time there. There are two independent bases to uphold the Section 1001 conviction. First, at Liggins' policy. Can you start with the question that I asked your colleague? Your colleague's argument seems to be premised on the idea that sexual act for purposes of a 1001 charge, this 1001 charge requires penetration. I don't know where that comes from, but what's your interpretation of sexual act? Is it limited by the code's definition or is it a contemporary ordinary understanding of the jury? Your Honor, we agree with your position that it's the latter and we come to that conclusion by looking at both the indictment and the jury instruction. For counts one through four, both the indictment and the jury instruction specifically define sexual acts in terms of the definition in the statutory code. We find no such definition in count five, either in the indictment or the jury instruction. And to us, it makes sense that you would not limit the definition of sexual act to penetration in the course of determining whether defendants obstructed justice under Section 1001. Certainly, a lie about whether he engaged in any kind of sexual activity at all, regardless if it was penetrative, would have a tendency to influence an investigation into whether he sexually abused an inmate. So yes, it and this is maybe a little speculation on your part, but I'll ask it anyway. Is that a theoretical explanation for the for the otherwise seemingly inconsistent jury verdict? It is, Your Honor. We think it's quite possible that the jury found beyond, could not find beyond a reasonable doubt that Mr. Liggins penetrated BL, but we think that it's given the evidence in the case, it's quite likely that they did find beyond a reasonable doubt that there was some kind of sexual activity, even though it was not penetrative in that office. And Mr. Wagg, is the enhancement under 1001 an element of that offense? It's not an element of the offense. What is it then? It's, it's, it's a, it's a means of increasing, increasing a sense that we have the... Wait, wait, wait, wait, stop, stop, stop, stop. Now, you got plenty of good arguments. Yeah. But it is really your argument that it's not an element after a lien? Let me, let me, let me rephrase. It is an element, Your Honor, and we believe that the factual predicates for the enhancement were established in the indictment. Basically, at the time of the indictment, Mr. Liggins knew that he was, he was a subject of investigation into possible sexual abuse of an inmate. And as, as Judge Richardson, as you indicated, it's 1001, you read matter to indicate, to be the investigation. Therefore, you look at whether the false statements were related to the investigation related to an offense under Chapter 109A. And they clearly did because they were, they were investigating whether... So then answer, what from the indictment tells us that this investigation was into sex crimes instead of, you know, drugs or, you know, something else? I know that from the indictment. The fact that it's mentioned sexual acts three times, the fact that you look sort of at, you can look at the count number five in the context of the entire indictment in which he was being prosecuted in counts one through four for various sex abuse crimes. We think that... Well, but that, that shows the end result, right? But, you know, if they were investigating a drug crime for one reason or another, we might not expect FBI agents to ask about sexual activity in a drug investigation, but we can certainly imagine reasons why it might be relevant. I mean, the trouble I've got, and I get as a factual matter, you're there, but I need to look at the four corners of the indictment and be able to say that the matter I read as investigation was related to a 109A investigation. And, and I don't see that in, I mean, I don't see that in the indictment. I certainly don't see that in the jury instruction. But I want you to tell me what, what am I looking to, to learn that piece of information? Your Honor, again, I, I return to, you look at, you look at the actual language of count number five. You've got three mentions of, of a sexual act. You've got the reference to the FBI, the joint FBI-DOJ investigation. At that, at the time that Mr. Leggend was indicted, he was well aware, he was told at the beginning of his, of the interview that he was being, he was a subject of an FBI investigation into possible sex abuse of an inmate at FCI Petersburg. Right. Now, but again, this is conflating the facts. I get as a factual matter, you got a really great claim. The problem is like the formality matters here, right? And the indictment does talk about sex. It also talks about, you know, computer, online computer and printers, right? So maybe it was a, you know, a computer crimes investigation for all I know, because it, it looks at matter and it tells us what the matter is, but it defines the matter as a general matter within the jurisdiction of the FBI. That's it, right? It doesn't tell us what kind of matter it is beyond that. And so that's, do you understand my point? Yeah, I do. I see, do you see your issue? I mean, sir, I didn't interpret opposing counsel's argument to argue that the validity of the indictment, I sort of interpreted the argument to focus on the validity of what he was informed at the arraignment. But an Alene error or an Apprendi error is fundamentally about what's in the indictment and what's in the jury charge, right? I mean, that's correct. That's what an Alene error is. So maybe I'll ask one more question and then maybe I'll let my colleagues go. But assuming that I disagree with you on the merits of this, and I think it is an Alene error. First, have you argued harmless error? We did argue harmless error, that even if he was entitled to the information, the correct information about the maximum statutory sentence, the fact that he did not receive the correct information doesn't make a difference because he would have, there's no evidence that he would have pled guilty instead of proceeding to trial. So that's the question I want to ask. And I take it that you did. It seems like you did in your brief. But the question I've got is a slightly different. What is, what do we look for for harmless error? And if you don't know the answer to this, it's fine to just say I'm not following you. It's totally fine. But there are two lines of cases that we have. One represented by the we can look at the evidence to see if the error is harmless. And so that's one form of harmless error in this type of problem. And at least in a case called Catone, we apply Natter to Apprendi errors, which are Alene errors. And so is that the harmless error that you're advocating for? Or separately, are you arguing, are you arguing that the error is harmless for some other reason? Well, we're arguing that the error is harmless because it would not have changed the defendant's trial strategy. I don't know if that falls into your Alene box. Do you believe that you can show harmless error merely by showing the facts that are relevant or uncontroverted and overwhelming? Is that sufficient to show that? With regard to Apprendi, my understanding of Apprendi is that it only applies once the district court passes sentence. And if it imposes a sentence greater than the statutory maximum, then you have to look at whether the facts that led to that sentence above the statutory maximum were presented to the jury and proven beyond a reasonable doubt. But here we have a sentence that was 54 months, which was below the 60 months statutory maximum for even a standard section 1001 violation. So I'm not sure how there was any Apprendi violation here. But he was, you know, Alene says that the error is not the sentence. The error is the improper range, right? And so he had an improper range, hypothetically. I don't mind asking you to concede that. But he had an improper range. And normally if it's under the old statutory maximum, that would be harmless. I get your point. But here we've got a little bit of a wrinkle because the guideline specifically enhances his sentence as a result of the higher statutory maximum, right? And so what I have a hard time understanding is why that isn't the error unless, you know, the overwhelming and uncontroverted evidence point gets you out of the box. Are you talking about the three-year enhancement from five years to eight years? Well, I'm talking about the four-level enhancement as a result of it being an eight-year max offense instead of a five-year max offense, right? There's a four-point guideline enhancement, right? Yes, the four-level enhancement of Section 2J1.2, I think you're talking about. Okay. I think my interpretation of this enhancement is that it applies if so long as the matter is related to a sex offense under Chapter 109. And the matter is the investigation. So help me understand how I get there because it says, it applies if you're convicted under 1001 and, quote, the statutory maximum term of eight years applies, right? So that sounds to me like it's actually referring to whether the statutory maximum term applies, not the underlying facts. Well, I've got Section 2J1.2. If the defendant was convicted under Section 18 U.S.C. 1001 and the statutory maximum term of eight years imprisonment applies because the matter relates to sex offenses under Chapters 109A and so on and so forth. So what I think, how you apply this particular enhancement is you look at the matter as Your Honor previously suggested to opposing counsel and the matter is an investigation into this possible sex abuse of an inmate and that related to a sex offense under Chapter 109A. So the four-level enhancement would apply here. So, in other words, your argument is that it doesn't matter whether the eight-year statutory maximum actually applies. If it could have applied, then you think this section applies? Yes, that's my reading of this four-level enhancement. Okay, but if, and I'll stop because I've hogged your time and I want to give my colleagues an I don't think it necessarily destroys our harmless error argument. I mean, our harmless error argument is based on, you know, the fact that this, whether he was informed of five years or eight years would not have changed the decision for the trial because he was facing possible imprisonment of life if he was convicted on these other offenses. I'm not sure that answers your question, but that's sort of where we are on harmless error. Mr. Wayne, could I just throw up so that I understand this because now I'm a little bit confused, but that's a different harmless error analysis than the one that I think, I don't want to put words in Judge Richards's mouth, but I think what we're trying to figure out is whether or not there is in fact uncontroverted evidence of the underlying sexual act that Mr. Gadsden says completely fails for lack of proof. And so can you answer that question? Yes, your honor. If you take our position is that the sexual act as Judge Richardson noted is not necessarily penetrative sex as defined by the statute, but sort of the common ordinary definition of sex that an ordinary juror might apply. The evidence that we have right here is first the obstructive behavior of Leggins in taking BL into an unattended, unsurveilled office after hours. We have BL's trial testimony in this contemporaneous report of the assault to his cellmate, two FCI officers, and two nurses. We have the DNA evidence, including the DNA of the anal rectal swab of BL, the inside of his jockstrap, and the outside of his shorts. And we have the IT manager's testimony regarding the implausibility of Leggins' account of his conduct in that office. So I think if you view all that evidence in the light most favorable for government, certainly you come to the conclusion that he engaged in a sexual act as the ordinary definition of sexual act and lied about it. And I'd also like to sort of bring up the point that there's another independent basis to uphold the section 1001 conviction, which is that Leggins falsely stated that he was engaged in quote-unquote just conversation with BL while in that office and while he attempted to use a computer. And there's sort of uncontroverted evidence from the IT manager that no one attempted to log on to the computer during the time that Leggins claimed to be in that office using the computer, and his story of inserting his PIP card and being unable to input his PIP number was implausible. So certainly if this court has certain reservations about upholding the section, the 1001 conviction based on the false denial of engaging in sex with any inmate, it certainly could turn to the false statement about engaging in just conversation to uphold the conviction. I'd also like to add that Mr. Gavin, I think, you know, said a lot about the so-called evidence of how it was implausible to walk the victim through the corridor only 315 seconds into raping for five minutes. Certainly that was an argument and all that evidence that opposing counsel presented to the jury that the jury already considered and rejected. And, you know, viewing the light in those favorable governments, this court should reject as well. Mr. Wang, based on the way the indictment was written, is it possible that the jury was convinced beyond a reasonable doubt that he did lie about the computer and they just glossed over the sexual nature? Well, it wasn't. They weren't told you've got to find the computer lie and the sex act. So is it possible that when they got to the computer, they just found him guilty? And that's the end of it. It's possible, Your Honor. It's very, it's impossible to speculate about what exactly the jury was thinking. No, no, no. There's a special verdict form, right? Yes, that's correct. In the special verdict form, they have to check which lie, either or, or both. And they check both statements as being lies. That's correct. I was interpreting Judge Floyd's comment. I mean, maybe they just glossed over the second lie after finding the computer lie and just didn't give it much thought and check yes. But we can't really speculate about what the jury was thinking. We have to look at the face of the verdict. And the verdict indicates they found both lies, both that he falsely denied engaging in a sex act with an inmate at any time, and that he falsely stated that he was engaged in just conversation with DL. So I think we have to just look at the face of the verdict form and say that we think the jury did their job and came to those determinations. And basically, you can rely on either one to support the Section 1001 conviction. Your Honors, if you have any other questions about, I see my time is running down. If you have any other questions about the sufficiency, the statutory maximum sentence or the procedural and substantive reasonableness of the sentence, I can answer them now. If you don't, I'll just send the briefs and respectfully request this court from the conviction and sentence. Thank you. Thank you, Mr. Wang. Mr. Gavin? Yes, sir. Thank you. Judge Richardson, to address your comments about whether or not this is something that the jury could infer from a common sense approach based on their understanding in the general world of what a sexual act is versus what the statutory definition is, it would be fine, if they had been told you can rely on your own inferences that you obtain from common sense daily activity. But they were only told sexual acts and sexual acts was defined throughout and counts one through four uniformly. So there would have been no other way to say when he gives the instruction. And I just this is my experience. I haven't pulled this particular charge. But don't they say for purposes of counts one through four, sexual act means they do that in each count. Right. And so the point being is that that means not for it doesn't say that for count five. And the sort of reasonable interpretation there means that sexual act means, you know, what a lay person's understanding would be for count five. If that was the case, and they would have to have gone beyond the jury instructions that they were given, because there wasn't any definition provided them and there wasn't any instruction that was routed to them that would have said, I mean, they didn't they didn't provide instruction, they never provide instructions on every word in an indictment, right? Or the instructions are always subject to interpretation, right? Why is why is this different from all the other words that they use? Because every phrase, but because in this case, judge, it was an element. I mean, to get an enhanced penalty, it was an element. There are four elements under the basic offense, but it should have been a fifth element they would have instructed upon to establish that the matter was an offense covered under 109A. They were only given instruction on the first four elements. Mr. Gavin, I'm not saying this is going to be the result, but assume that we uphold the conviction on the computer lie. What would you have us do? Judge, if you uphold the conviction on the computer lie, then I would have the court at a based on using a five-year maximum. That may or may not create prejudice to defendant, because I agree that his ultimate sentence was less than the five-year maximum, but the prejudice was the fact that he was given an additional four levels under the sentencing calculus based on it being an eight-year term. So the judge started in the wrong spot. What I would say to you, Judge Floyd, is that I don't know how the computer cannot be intertwined with the sex act, because there's additional sentence in that indictment. The additional sentence in that indictment basically says, yeah, you lied to us about going to a computer and a printer when you knew you had engaged in a sexual act with the inmate. That's the last sentence. That's not, that was not included in Mr. Wang's argument. So the two are intertwined. Wait, wait, wait, but it says that, but it also says separately that the defendant used an unintended office with no surveillance cameras. I mean, that, that's the, the point is those go together, right? Well, I think you have to read it all, but it's like three different clauses to that language in the indictment. So, you know, if we're going to have a special verdict, that's not what they included in the special verdict, because the special verdict form was not that specific. You know, whether it was that part of the clause or whether or not, because he had engaged in a sexual act clause or whether or not they were in an unintended office with no surveillance cameras clause. I mean, there's three different parts to that clause, but the underlying premise is that, that he had knew that he engaged in a sexual act, frankly, and this is not. I guess this is part of your point. Even that, that last clause says that he used an unattended office with no surveillance camera to engage in a sexual act with the victim. So even that clause is sort of dependent on the jury somehow finding that that was the purpose of using the office. Correct, Judge Diaz. And if you take that another step, if there was no sexual act established, then who cares why he was in the office? Who cares whether or not he used a printer or whether he didn't? At that point in time, the issue would be that that wouldn't be material. I didn't raise that because I believe that they're so intertwined that they are based upon the establishment of a sexual act. That's the root cause of the lie. That's the root cause of the harm. If there was no sexual act, but he lied about just going into an office for a printer, I'm not sure that that would be material enough for, you know, a conviction. So that's my thought on the fact that I believe that even though there are two different counts, they both are predicated upon the establishment of a sexual act. And the issue of just the alibi or the cover-up is really immaterial to the real substantive act, which is because he had engaged in a sexual act. So, Mr. Gavin, let me follow up with the, this is part of Judge Richardson's questions. If we find, in fact, that the evidence sufficient, that there was, in fact, the sexual act as required by the code. Taking the definition that you say would be required, not just any act, but the sexual act that you say is not supported by the evidence. But if we conclude otherwise, is this Apprendi error harmless? I don't believe so. I mean, I think the error that Mr. Wang was talking about with which, you know, whether or not Mr. Luggins would have chosen to plead guilty or not plead guilty if he'd been given the correct statutory max might be harmless. But the absence of giving the jury all of the elements that were required to get the enhanced penalty under 1001 would be almost plain error under, you know, even under the potential Medley case that you guys have pending now. It would seem to me that that's a constitutional issue under the Fifth and Sixth Amendments, whereas he has a right to have the grand jury indict him with appropriate language and he has the right to the jury have to consider the appropriate language once written. If Judge the five-year term, the eight-year term, I think that could be considered under the plain error. I see I only have 30 seconds, Your Honor, so. My colleagues have any further questions? No. Thank you. Thank you, Mr. Gavin. I note that you were court appointed and so I want to thank you for taking this case on. I think your client was very ably represented by you today, both here before us and on the papers. And Mr. Wang, thank you as well for representing the government's interests. As you probably know, in normal times we would come down and shake your hands and thank you personally. We can't do that, but hope to do that again real soon. But in the absence of that, you have the thanks of myself and my colleagues for your able work on this case. So thank you very much. Thank you, judges.
judges: Albert Diaz, Henry F. Floyd, Julius N. Richardson